IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RYDELL MCKEITH PETTAWAY,**

    Petitioner,

v.                                                                Civil Action No. **3:20CV69**

**JOHN WALRATH,**

    Respondent.

## MEMORANDUM OPINION

Rydell McKeith Pettaway, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("2254 Petition," ECF No. 1). Pettaway was convicted in the Circuit Court of the City of Williamsburg and James City County ("Circuit Court") of malicious wounding, assault and battery of a police officer, and resisting arrest. (ECF No. 10–1, at 2.) In his § 2254 Petition, Pettaway contends that he is entitled to relief on the following grounds:[1]

| | |
|---|---|
| Claim One | Petitioner was denied the effective assistance of counsel because counsel failed to adequately explore and pursue a defense that Petitioner was not guilty by reason of insanity. (ECF No. 2, at 2.) |
| Claim Two | "The accumulation of these errors above in the case violated Petitioner's right to due process as guaranteed by the 14th Amendment." (*Id.* at 6.) |

As explained below, these claims lack merit and will be DISMISSED.

### I. The Applicable Constraints upon Federal Habeas Corpus Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and

---

[1] The Court corrects the capitalization and punctuation in the quotations from the parties' submissions and the state court records. The Court employs the pagination assigned by the CM/ECF docketing system.

convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## II. Factual Background

Prior to evaluating Pettway's claims, it is helpful to review of the facts surrounding his crimes. The Court of Appeals of Virginia, in rejecting Pettway's challenges to the sufficiency of the evidence for his crimes of assault and battery of a police officer and malicious wounding, aptly summarized these fact as follows:

> On the afternoon of April 5, 2016, Montanashea Osler saw appellant's car roll into a ditch near a volunteer fire department in James City County. Appellant exited his vehicle, approached Osler's car, and attempted to open her car doors for nearly thirty seconds, banging on the windows and demanding that Osler "open up." Frightened, Osler drove away as quickly as she could and called 911.
> James City County Police Officer Jeremy Morris, who was in uniform and displaying his badge of authority, responded and saw appellant trying to retrieve something from a car that was "nose down" in the ditch across the street from the fire department. When Morris approached appellant, he noticed appellant's eyes were bloodshot and glassy. Appellant, whose pupils were dilated and unresponsive to light, told Morris that he had "lost his mind a little bit" and had used "spice and marijuana." Appellant consented to Morris searching him, but when Morris attempted to do so, appellant pulled away and tried to leave the scene. After Morris

2

repeatedly warned appellant that he could not leave, appellant balled up his fists, prompting Morris to draw his taser and order appellant to place his hands behind his back.

Nearby volunteer firefighters saw Morris struggling to gain control of appellant and joined Morris as he tried to handcuff appellant. Despite the firefighters' assistance, Morris could not secure appellant. Morris testified that at that point he made up his mind that he was going to arrest appellant based on "everything and his aggressive actions." He also told appellant that he was going to handcuff him. After appellant refused to comply, Morris tased appellant. Appellant fell to the ground, pulled the taser prongs out of his body, and ran into the woods. Morris and the firefighters pursued appellant, but Morris lost his footing in a ravine and fell. Firefighter David Wigley reached appellant first. Upon seeing appellant "crawling" up the side of a six-foot deep ditch, Wigley concluded that appellant could no longer run and followed appellant into the ditch.

Appellant stood up, looked directly at Wigley, and moved toward him. Anticipating appellant was going to "get him," Wigley "closed the gap" between them, tackled appellant, and tried to hold him until Morris could join them. Appellant began "growling" and biting Wigley, tearing through Wigley's clothes and piercing his flesh. Wigley screamed for Morris and tried to push appellant away, but appellant pulled Wigley closer and continued to bite his face, ear, and torso. Wigley testified that appellant bit his ear so hard that Wigley feared that his ear "was gone." For nearly three months after the attack, Wigley experienced extreme sensitivity from his torso wounds and was left with scarring on his torso and face from the bites.

When Morris caught up to Wigley and appellant struggling on the ground, he could see "a large bite wound to the left side of [Wigley's] face" and blood running down Wigley's neck. Morris pulled appellant off Wigley while another firefighter pulled Wigley from beneath appellant. Concerned about the severity of Wigley's wounds, Morris instructed the other firefighters to assist Wigley while Morris attempted to gain control of appellant. As Morris tried to place appellant in handcuffs, appellant grabbed Morris in the groin twice. Officer Fitzsimmons arrived at the scene and assisted Morris in placing appellant in Fitzsimmons' vehicle. Fitzsimmons drove appellant to the hospital for a blood draw and placed him under arrest.

*Pettaway v. Commonwealth*, No. 1603-17-1, at 1–3 (Va. Ct. App. June 13, 2018) (alterations in original).

### III. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient

3

performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Claim One

In Claim One, Pettaway faults counsel for failing to pursue a defense that he was not guilty by reason of insanity. In support of this claim, Pettaway, directs the Court to, *inter alia*, a three-page evaluation of his competency to stand trial. In rejecting this claim, the Supreme Court of Virginia found the following:

> In a portion of claim (a), petitioner contends he was denied the effective assistance of counsel because trial counsel failed to investigate and assert as a defense petitioner's insanity at the time of the offenses. Petitioner alleges he "lost his mind for a little bit" and suffered "psychotic symptoms" at the time of the offenses due to his intoxication from using synthetic marijuana. Petitioner contends counsel failed to introduce evidence of petitioner's hospitalization following the incident, which would have revealed that petitioner suffered from delirium, traumatic injury, and multi-organ failure due to "polysubstance abuse." In support of this contention, petitioner attaches to his habeas petition two medical assessments from his hospitalization following the crash. One assessment, dated hours after the incident, established that he arrived to the emergency room "screaming non sensical [sic] statements." The other assessment, dated the morning after the incident, established he had suffered a drug overdose and remained unaware of his surroundings and unable to control himself. Additionally, petitioner faults counsel for not introducing evidence of his low intelligence quotient ("IQ"), depression, and attention deficit hyperactivity disorder ("ADHD"). In support of this contention, petitioner attaches to his habeas petition a three-page evaluation of his competency to stand trial and one page of what appears to be a

4

multi-page, undated "Mental Health Information Narrative" describing him as having a low IQ, ADHD, and depression, for which he was prescribed medication. Petitioner contends that, had counsel investigated and introduced evidence of petitioner's emotional disturbance and mental health history, he would not have been convicted.

The Court holds this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the manuscript record, the trial transcript, and petitioner's exhibits to his habeas petition, demonstrates petitioner was tried on charges of malicious wounding, assault and battery of a police officer, attempted abduction, resisting arrest, and driving under the influence. A motorist saw petitioner's car roll into a ditch and, after petitioner exited his car, he approached the motorist and attempted to get inside her vehicle. The frightened motorist drove away and called police.

The responding officer noticed petitioner had "bloodshot and glassy eyes" and smelled of marijuana. Petitioner explained he "lost his mind for a little bit" and admitted to using marijuana and "spice," a synthetic cannabinoid. Petitioner initially consented to a search of his person but attempted to pull away and became aggressive as the officer began the search. Petitioner "actively resist[ed]" the officer's attempts to place petitioner's hands behind his back. Responding firefighters saw the struggle and unsuccessfully attempted to assist the officer in handcuffing petitioner. The officer informed petitioner he was under arrest, but petitioner still refused to comply. The officer used his Taser to subdue petitioner, but petitioner removed the Taser prongs from his body and ran into the nearby woods.

A medic chased petitioner, attempting to maintain a safe distance, but the two eventually scuffled on the ground. As the medic tried to hold petitioner down, petitioner began "growling" and biting him, piercing the medic's clothing and leaving bite marks and abrasions on his chest, neck, face, and ear. When the officer reached the two, he attempted to handcuff petitioner, but petitioner reached back and grabbed the officer twice in the groin. Following his arrest, petitioner was transported to the hospital, where he informed doctors he had used controlled substances prior to the incident.

At trial, a toxicology expert testified people who use spice often display aggression, violent behavior, agitation, and paranoia. Spice users also may become incoherent and undergo seizures or other severe medical effects. The expert testified that growling and biting are indicative of aggression and "bizarre behavior." Further, the expert opined petitioner's statement that he lost his mind was consistent with spice use.

"A criminal defendant is presumed to have been sane at the time of the commission of a criminal act." *White v. Commonwealth*, 272 Va. 619, 625 (2006). "[U]nder the *M'Naghten* test for insanity, recognized in Virginia, the defendant may prove that at the time of the commission of the act, he was suffering from a mental disease or defect such that he did not know the nature and quality of the act he was doing, or, if he did know it, he did not know what he was doing was wrong." *Id.* Additionally, Virginia recognizes the "irresistible impulse" doctrine, which

5

> applies "only to that class of cases where the accused is able to understand the nature and consequences of his act and knows it is wrong, but his mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." *Thompson v. Commonwealth*, 193 Va. 704, 718 (1952). "[V]oluntary intoxication is not an excuse for any crime" except "in cases involving deliberate and premeditated murder." *Wright v. Commonwealth*, 234 Va. 627, 629 (1988).
>
> Petitioner proffers no evidence that would support the conclusion he was legally insane at the time of the offenses. His allegation of voluntary intoxication from consuming controlled substances is insufficient. Absent proof he satisfied either recognized test for legal insanity, evidence of petitioner's low IQ, ADHD, depression, and the medicine prescribed to treat his ADHD and depression would have been inadequate to support the defense. *See Stamper v. Commonwealth*, 228 Va. 707, 717 (1985) ("For the purposes of determining criminal responsibility a perpetrator is either legally insane or sane; there is no sliding scale of insanity. The shifting and subtle gradations of mental illness known to psychiatry are useful only in determining whether the borderline of insanity has been crossed."); *see also Jenkins v. Commonwealth*, 244 Va. 445, 456 (1992) (holding Virginia does not recognize a diminished-capacity defense). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 10–1, at 2–4 (alterations in the original).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2). Indeed, it was eminently reasonable for counsel to decline to pursue a defense of not guilty by reason of insanity given the state of Virginia law and the lack of evidence supporting Pettaway's insanity. *See Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."). Accordingly, Claim One will be DISMISSED because Pettaway fails to demonstrate deficiency of counsel or prejudice.

### B. Claim Two

In Claim Two, Pettaway asserts: "[T]he accumulation of errors in this case violated Mr. Pettaway's right to due process. See Ground One: Attachment to Habeas Petition." (ECF No. 1, at 6.) To the extent that this claim is simply a regurgitation of Claim One, it lacks merit for the reasons set forth above. To the extent Pettaway seeks to raise a new claim, he has failed to adequately do so. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (concluding a habeas action subject to summary dismissal where it "stated only bald legal conclusions with no supporting factual allegations"). Accordingly, Claim Two will be DISMISSED.

### IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 8) will be GRANTED. Pettaway's claims will be DISMISSED, and his § 2254 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[2]

An appropriate Final Order shall issue.

Date: 15 December 2020
Richmond, Virginia

/s/ J.g.J.
John A. Gibney, Jr.
United States District Judge

---

[2] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Pettaway fails to meet this standard.

7